### No. 12,717.

### JOSEPH CAPPEL VS. HIS CREDITORS.

A creditor may oppose a fraudulent surrender any time from its first appearance in court down to within ten days next following the meeting of creditors.

The statute which declares that a creditor who proposes to charge fraud against his debtor, shall do so within the ten days next following the meeting of creditors, fixes only the limit of time *beyond which he may not do so.*

APPEAL from the Tenth Judicial District Court for the Parish of Avoyelles. *Cullom, J.*

---

*A. J. Lafargue, Cappel & Cappel* for Plaintiff, Appellee.

---

*Couvillon & Son* for A. Baldwin & Co., Defendants, Appellants.

---

Argued and submitted February 11, 1898.
Opinion handed down February 21, 1898.

The opinion of the court was delivered by

BLANCHARD, J. In 1883 and for several years prior thereto Joseph Cappel conducted a mercantile business.

He failed in the year named, ceased business, suits were brought by his creditors and judgments obtained.

No settlement or adjustment was effected. Time passed on, some of the claims and judgments were permitted to prescribe, others were revived and kept alive. Among the latter was the judgment of A. Baldwin & Co., opponents herein, now amounting, principal and interest, to more than two thousand dollars.

It seems that execution issued on this judgment in 1897 and under it a certain tract of land, containing one hundred and sixty acres, was seized.

Following this seizure, the judgment debtor, on June 14, 1897, filed a petition, setting forth his failure in business in 1883 and the causes therefor, and his continued insolvency and inability either to meet his obligations or to resume business. He prayed to be permitted to make a cession of his property and for the benefits of the insolvent laws. He submitted a schedule of liabilities and assets, a list of creditors, etc., and asked that a meeting of his creditors be called, and, meanwhile, that all proceedings against his person and property be stayed.

An order of court was, thereupon, made, accepting the cession of property for the benefit of the creditors, directing a meeting of creditors to be held, and staying proceedings against the debtor and his property as prayed for.

The only property scheduled by the insolvent as forming his estate was the one hundred and sixty acres of land under seizure by Baldwin & Co. on their judgment.

It was given a valuation of one thousand dollars.

Debts amounting to six thousand and twenty-eight dollars and nine cents, principal, were exhibited—the largest being a mortgage claim for four thousand dollars put down in favor of J. C. Cappel, the son of the insolvent.

No mention is made of the books, notes, accounts, stock of merchandise, etc., belonging to the business he had conducted in 1883, the failure of which is alleged as the reason of his insolvency and the justification of his purposed cession.

The meeting of creditors was held on September 1, 1897. Certain

creditors appeared, made proof of their claims, voted to accept the surrender for the discharge of the debtor, for C. D. Cappel as syndic, and for the sale of the property for cash after thirty days' advertisement. The notary kept the meeting open for *thirteen* days, though no creditors appeared after the first day.

The only creditor named on the schedule who took no part in these proceedings was A. Baldwin & Co., who held under seizure the only property surrendered.

The *proces verbal* of the creditors' meeting was returned into court on September 14.

On the 1st of September, the day the meeting opened, Baldwin & Co. filed an opposition to the insolvent proceedings. They represented they were judgment creditors of Joseph Cappel and held under seizure a certain tract of one hundred and sixty acres of land worth more than two thousand dollars; that a short while after its seizure the judgment debtor filed insolvent proceedings; that they oppose these proceedings and the cession on the grounds substantially that none of the parties placed on the *bilan* as creditors are creditors save themselves; that the cession is not a *bona fide* surrender, having been made more than fourteen years after the alleged cause of failure; that the insolvent had failed to present, account for or deliver over the books, accounts, notes, merchandise, etc., of his mercantile business, and that he had been guilty of fraud in making dispositions of property and money so as to avoid the pursuit and reach of his creditors. They demanded that he be adjudged guilty of fraud; that the surrender and the appointment of syndic be disallowed; that the whole proceeding be rejected, and that the stay against the person and property of the insolvent be revoked.

To this opposition, in November following, the debtor filed an exception of prematurity, which was sustained and the opposition dismissed.

Following the dismissal of the opposition, and on the same day, the debtor presented a petition setting forth the action taken at the creditors' meeting, averring no opposition thereto and praying that the proceedings be approved and homologated, and that the syndic named by the creditors be confirmed. Immediately thereupon the court granted the order as prayed for.

From the judgment dismissing their opposition Baldwin & Co. took a suspensive appeal.

The only question we can now pass upon is: Was the ruling of the court *a qua* on the exception of prematurity correct?

We are constrained to hold it was not.

Baldwin & Co., judgment and seizing creditors, could present their opposition to the insolvent proceedings, to the proposed cession, charging fraud and injury, immediately upon the filing of the proceeding. They did not have to wait until the meeting of creditors was held, or until the *proces verbal* had been returned into court and then file it within ten days thereafter.

A creditor may oppose a fraudulent surrender any time from its first appearance in court down to within ten days next following the meeting of creditors.

In the instant case, the meeting of creditors was held on the 1st of September; on that day all the creditors who intended to participate, participated; on that day all the votes intended to be cast for acceptance of the cession and for syndic, were cast. That was the day the opposition was filed. It was timely, not premature. It was timely as to the appointment of syndic, for the creditors named that official on that day.

The statute, which declares that a creditor who proposes to charge fraud against the debtor shall do so within the ten days next following the meeting of creditors, fixes only the limit of time beyond which *he may not do so.* R. S. 1802; 46 An. 1176.

There is no direction that a creditor may not charge this fraud *prior* to the meeting of creditors, and no reason exists why a creditor, with good grounds for alleging fraud, must withhold such allegations until the creditors shall have assembled in meeting. Creditors can not pass upon and decide questions of fraud at their meeting. Such questions are for a jury. R. S. 1802 *et seq.*

And because the creditors may, at their meeting, decide against acceptance of the surrender is no argument against the filing of charges of fraud prior to the meeting. If, when the creditors meet, they refuse to accept the surrender, the opposition previously filed might, perhaps, prove unnecessary. But the possibility or contingency of non-acceptance should not militate against the right of creditors to attack a fraudulent cession as soon as proceedings therefor are taken.

Besides, it must be remembered that in the preliminary order which the judge makes *he accepts the cession* for the benefit of the

creditors. R. S. 1789. So that there is, from the very start, a cession to oppose. 40 An. 95; 46 An. 1429.

Ths authorities cited in appellee's brief, as sustaining a view contrary to that herein announced, do not sustain it. 40 An. 652; 46 An. 1111, 1428; 42 An. 1054; 8 L. 128; 2 N. S. 57.

The extent to which those cases go is in their reference to the ten days in which opposition may be filed *to the proces verbal* of the meeting of creditors; ten days for filing opposition *to the proceedings of creditors.*

But charges of fraud against the debtor are independent of the meeting of creditors, and not affected by anything done or not done there.

It is therefore ordered, adjudged and decreed that the judgment appealed from, sustaining the exception of prematurity and dismissing the opposition of A. Baldwin & Co., be annulled, avoided and reversed, and it is now ordered that the exception aforesaid be overruled, and the opposition of Baldwin & Co. be reinstated and proceeded with according to law.

It is further ordered that all proceedings had and orders taken in the matter of the insolvency of Joseph Cappel, to the prejudice of said Baldwin & Co., as opposing creditors, and which could not legally have been taken had said opposition not been dismissed, are, so far as the same affects said opposition, set aside and vacated—costs of both courts to be taxed against the appellee.